## COMMONWEALTH *vs.* ABRAHAM M. FORISH.

No. 01-P-535.

Hampshire. June 10, 2004. - July 23, 2004.

Present: GRASSO, COWIN, & KAFKER, JJ.

*Firearms. Constitutional Law,* Search and seizure. *Search and Seizure,* Warrant.

This court concluded that the search of a criminal defendant's residence pursuant to a search warrant violated the Fourth Amendment to the United States Constitution where, at issuance and during execution, the warrant neither specified the items to be seized nor was accompanied by an incorporated affidavit that specified those items, and where a perfunctory reference in the warrant to a supporting affidavit that was not attached did not supply the requisite particularity. [558-561]

This court did not reach the question whether the Commonwealth had sufficient evidence to reprosecute the defendant on an indictment alleging discharge of a firearm within 500 feet of a dwelling without evidence seized during an illegal search of the defendant's residence. [561-562]

INDICTMENTS found and returned in the Superior Court Department on January 12, 1999.

A pretrial motion to suppress evidence was heard by *Robert H. Bohn, Jr.,* J., and the cases were heard by *Bertha D. Josephson,* J., on a stipulation of facts.

*David H. Mirsky* for the defendant.

*Steven Greenbaum,* Assistant District Attorney, for the Commonwealth.

GRASSO, J. Following the denial of his motion to suppress evidence, and after a bench trial, the defendant was convicted of possession of a machine gun (G. L. c. 269, § 10[*c*]) (two counts) and discharging a firearm within 500 feet of a dwelling (G. L. c. 269, § 12E).[1] On appeal, this court affirmed the

---

[1] The defendant was found not guilty of possession of an infernal machine (G. L. c. 266, § 102A). The Commonwealth filed a nolle prosequi to an indictment for possession of a silencer (G. L. c. 269, § 10A).

defendant's convictions for illegal possession of a machine gun and for discharging a firearm. See *Commonwealth* v. *Forish*, 56 Mass. App. Ct. 1114 (2002). Thereafter, the United States Supreme Court granted the defendant's petition for a writ of certiorari and remanded the case to this court for further consideration in light of *Groh* v. *Ramirez*, 124 S. Ct. 1284 (2004).

The question we address on remand is whether a search of the defendant's residence pursuant to a search warrant violated the Fourth Amendment to the United States Constitution where the warrant neither specified the items to be seized nor was accompanied by an incorporated affidavit that specified these items. We hold that the search was an unlawful general search, and that the evidence seized should have been suppressed. At issuance, the search warrant failed to specify with particularity the items to be seized, and a perfunctory reference in the warrant to a supporting affidavit that was not attached did not supply the requisite particularity. Moreover, the search warrant suffered from the same deficiency at execution where the supporting affidavit was not present. Accordingly, we reverse the judgments of conviction. We order that judgments enter for the defendant on counts of the indictment for illegal possession of a machine gun and that the finding of guilty be set aside on the count for discharging a firearm within 500 feet of a dwelling.

1. *Background.* We recite the pertinent facts found by the motion judge.[2] On November 5, 1998, at approximately 3:00 A.M., the Easthampton police department received a report of gunfire in the Plain Street neighborhood, a thickly settled area of single family dwellings separated from each other by about one hundred feet. Officer Brian Ross responded to the area, but found nothing. At 5:00 A.M., a second caller, who identified himself as Edwin Sherman of 64 Plain Street, reported that he had heard machine gun fire in the area of Plain Street and Strong Street. Mr. Sherman expressed familiarity with machine guns and their sound from his military experience.

Officer David Ramsey went to Plain Street where he met Of-

---

[2]At the bench trial, the Commonwealth and the defendant entered a stipulation of facts that, with certain differences immaterial to resolution of the appellate issues, embody the essential findings of the motion judge.

ficer Ross. Together, they canvassed the neighborhood to determine the source of the gunfire and whether anyone needed assistance. After speaking with several residents who had heard the gunfire, the officers focused on the backyard of 60 Plain Street, the residence of the defendant. Donna Issun of 56 Plain Street told the officers that the police had removed guns from the defendant's house on an earlier occasion.

On arriving at the defendant's home, Officers Ramsey and Ross were met by the defendant, who was wearing military fatigues and military-style boots. The defendant appeared to be intoxicated. The officers told him that they were investigating reports of gunfire and asked if they could look in his backyard. The defendant told the police that he had not heard gunshots, even though he had been awake most of the night. After additional discussion, the police made a consensual entry of the defendant's home.[3] In the basement, they discovered what they believed to be a pipe bomb.

Easthampton police Detective Gary Pease arrived on the scene along with the Easthampton fire department and the Springfield bomb squad. Detective Pease found several expended nine millimeter shell casings, tightly clustered in an area of ground near a utility shed in the defendant's backyard. The casings did not appear to have been there for an extended time. As a result of their conversations with the defendant and observations made outside and inside the defendant's house, the police developed probable cause to believe that machine guns and other illegally possessed items were inside the defendant's home.[4]

After the bomb squad had removed and defused the device found in the defendant's basement and the immediate crisis had passed, Detective Pease, who knew that the defendant lacked

---

[3]The warrantless consensual search of the defendant's backyard and home led to the discovery of items that provided probable cause for issuance of the search warrant for the defendant's residence. We ruled this warrantless search proper in our previous unpublished decision, *Commonwealth* v. *Forish*, 56 Mass. App. Ct. 1114 (2002). On remand, we confine our inquiry to whether the search warrant set forth the objects of the search with sufficient particularity.

[4]For purposes of appeal, the defendant does not dispute that the search warrant *application* and *supporting affidavit* of Detective Pease set forth probable cause to believe that illegal weapons were present in the defendant's home.

the special permit necessary to possess a machine gun, decided to seek a warrant to search the defendant's home for illegal machine guns and related evidence of criminal activity.[5] Detective Pease completed (1) a search warrant application; (2) a supporting affidavit; and (3) a proposed search warrant.[6] He presented these to the clerk-magistrate of the Northampton District Court.

In section three of the *application*, which asks the applicant to "describe the property to be *searched for* as particularly as possible" (emphasis added), Detective Pease erroneously indicated not the *objects* of the search, but the *location* at which he believed these items would be found — the defendant's residence.[7] In his *supporting affidavit*, Detective Pease did specify, with particularity, the objects of the search. He sought permission to search the defendant's residence "for the purpose of locating and removing any and all types of firearms, ammunition, gunpowder, primers, fuses, explosive devices and supplies used to make ammunition or explosive devices," as well as for "books and writings on construction of explosive devices and ammunition." However, in the *proposed search warrant*, Detective Pease perpetuated his error regarding the objects of the search contained in his application. In the section that sets forth the magistrate's permission "to search for the following property," the proposed warrant again erroneously described the defendant's residence rather than the firearms and other objects of the search detailed in Detective Pease's affidavit.

After reviewing Detective Pease's application and supporting affidavit, the clerk-magistrate issued the search warrant without

---

[5]The Commonwealth asserts no claim that the search of the defendant's home was justified as one based on probable cause and exigent circumstances.

[6]Detective Pease utilized the form application, affidavit, and search warrant promulgated by the Trial Court. The form is a multi-part document containing an application, a blank affidavit, a blank search warrant, a return, instructions for preparing the application and affidavit, and instructions to the judge or magistrate issuing the warrant.

[7]"A single family ranch style dwelling located at #60 Plain Street in Easthampton. Located on the south side of Plain Street, the dwelling is a one floor ranch with a finished cellar beneath. The exterior is covered with blue vinyl siding with white trim and shutters. The driveway is on the right side of the dwelling. The numbers 60 are affixed to the right of the front door."

modifying the erroneous description of the objects for which permission to search was granted. Although the search warrant form contains a preprinted provision that states "[p]roof by affidavit, which is hereby incorporated by reference, has been made this day," the clerk-magistrate did not attach Detective Pease's affidavit to the search warrant when she issued the warrant.[8] As issued, the warrant contained no description of the objects for which permission to search had been granted.

Armed with the warrant, Detective Pease returned to the defendant's home where he and other officers searched the entire house. Neither the defendant, who had been taken into custody, nor any household member was present. The search resulted in the seizure of four firearms, including a machine gun that used nine millimeter ammunition, a semiautomatic rifle, ammunition of several calibers, gun powder, magazine clips, packing equipment, magazines and books containing instructions on homemade munition and incendiary devices, books on machine gun blueprints, and other such devices and materials.

At the hearing on the motion to suppress, the Commonwealth did not establish that the affidavit was present at the execution of the search warrant — either by attachment to the warrant or otherwise. Indeed, the sole evidence, and the motion judge's finding on this point, was to the contrary. The judge concluded that, "[a]lthough there is some evidence that the affidavit may not have been attached to the search warrant, the searching [officers] were clearly guided by its principles because the affiant in the affidavit, the officer applying for the warrant, and the officer executing the search were one and the same officer: Detective Pease. . . . Although Pease's actions in not attaching the affidavit to the search warrant may have been careless, it certainly did not rise to the level of police misconduct . . . ."

2. *The search warrant.* In *Groh* v. *Ramirez,* 124 S. Ct. 1284 (2004), the United States Supreme Court considered whether a search of a home pursuant to a search warrant that failed to describe the objects of the search violated the Fourth Amend-

---

[8]The clerk-magistrate stated: "[T]here was nothing attached to the Search Warrant when I issued it. If there had been an attachment to the Search Warrant, there would have been a notation made on the face of the Search Warrant indicating that there was an attachment. There is no such notation."

ment to the United States Constitution.[9] There, the applicant prepared an application and supporting affidavit that set forth probable cause to believe that specific objects of criminal activity would be found on the defendant's property. *Id.* at 1288. He presented these documents to a magistrate along with a proposed form of warrant. *Ibid.* In the portion of the proposed warrant that called for a particular description of the "person or property" to be seized, the applicant erroneously described the *place* to be searched. *Ibid.* The magistrate approved the proposed warrant as tendered. *Ibid.* In consequence, the warrant that issued failed to identify any of the objects of the search or to incorporate by reference the itemized list of such objects set forth in both the application and the supporting affidavit. *Ibid.*

A majority of the Supreme Court concluded that such a warrant was "plainly invalid" because "[t]he Fourth Amendment states unambiguously that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and *the persons or things to be seized.*' " *Id.* at 1289 (emphasis added by Supreme Court). As the Supreme Court explained, the particularity requirement as to the objects of the search serves two distinct purposes: (1) preventing general searches; and (2) providing necessary information to the individual whose property is searched or seized. Without specification of the objects for which permission to search is granted, either in the warrant itself or by specific incorporation from a referenced document attached to the warrant, a reviewing court is unable to conclude with any confidence that the magistrate intended to grant permission to search coextensive with the request contained in the application and in the supporting affidavit. *Id.* at 1291-1292. "The mere fact that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request." *Id.* at 1292. Additionally, without such specification, the person whose property is being searched and seized is unable to determine the "lawful

[9]Although *Groh* v. *Ramirez*, 124 S. Ct. 1284 (2004), considered the Fourth Amendment issue in the context of a civil action brought under *Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983, the majority left little doubt that the exclusionary rule would apply. See *id.* at 1294 & n.8.

authority of the executing officer, his need to search, and the limits of his power to search." *Id.*, quoting from *United States* v. *Chadwick*, 433 U.S. 1, 9 (1977). See *Commonwealth* v. *Guaba*, 417 Mass. 746, 753-754 (1994) (unless there are exigent circumstances permitting warrantless search, documents describing items to be seized must be present at search in order to meet particularity requirements of art. 14 of Massachusetts Declaration of Rights and G. L. c. 276, § 2).

In this case, as in *Groh*, the search warrant complied with the first three requirements of the warrant clause of the Fourth Amendment. The warrant was based on probable cause, was supported by a sworn affidavit, and described particularly the place to be searched. See *Groh* v. *Ramirez*, 124 S. Ct. at 1289. As in *Groh*, however, the warrant here failed to satisfy the fourth requirement of the warrant clause because it provided no description of the objects of the search. See *ibid.*

The fact that Detective Pease's *application* lacked particularity as to the objects of the search is not so problematic as the fact that the search warrant itself lacked such particularity.[10] "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Ibid.* What is fatal to the Commonwealth's case is the lack of particularity in the warrant and the absence, both at issuance *and* on execution, of an attached affidavit that specified the objects of the search.

At issuance, the search warrant did not specify the objects of the search with particularity, and the magistrate did not attach and incorporate Detective Pease's affidavit to the search warrant. The perfunctory statement in the standardized search warrant form regarding "[p]roof by affidavit, which is hereby incorporated by reference," does not supply the requisite particularity. Where the affidavit was not attached and made part of the warrant at issuance, we need not explore further the circumstances under which the cross-referencing and incorporation of other documents in a search warrant that is itself insufficiently particular might satisfy Fourth Amendment particularity requirements. See *id.* at 1290.

With respect to execution, Detective Pease's affidavit was not

---

[10]Unlike in *Groh*, here *both* the application and the search warrant failed to describe particularly (or at all) the things to be seized.

present at the time of the search. Unless the warrant itself is particular, or the incorporated supporting document that particularizes the objects of the search is attached to the search warrant, there can be no assurance that the searching officer will limit himself to searching for the authorized objects. As the Supreme Court observed in *Groh* v. *Ramirez, supra*: " 'The presence of a search warrant serves a high function,' *McDonald* v. *United States*, [335 U.S. 451, 455 (1948)], and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for [his] inspection." "Even though [the officers] acted with restraint in conducting the search, 'the inescapable fact is that this restraint was imposed by the [officers] themselves, not by [the magistrate].' *Katz* v. *United States*, [389 U.S. 347, 356 (1967)]." *Groh* v. *Ramirez*, 124 S. Ct. at 1292. In light of our conclusion that the search warrant was defective, we need not explore further the fact that the defendant, who had been taken into custody, was not present at execution of the search warrant and was unable to question the authority of the searching officers.

"[T]he presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant." *Id.* at 1291. As the Supreme Court has observed:

> "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional. . . . That rule is in keeping with the well-established principle that 'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.' "

*Massachusetts* v. *Sheppard*, 468 U.S. 981, 988 n.5 (1984), quoting from *Camara* v. *Municipal Ct.*, 387 U.S. 523, 528-529 (1967). Accordingly, the defendant's motion to suppress should have been allowed.

3. *Sufficiency of the evidence.* The Commonwealth properly

concedes that, apart from the evidence obtained in the illegal search of the defendant's residence pursuant to the warrant, there is no other evidence sufficient to support the defendant's convictions for illegal possession of a machine gun. Accordingly, judgments shall enter for the defendant on those counts.

The Commonwealth does not make the same concession regarding the defendant's conviction for discharging a firearm within 500 feet of a dwelling. However, without the items seized in the illegal search of the defendant's residence, including a machine gun that expelled the same type of nine millimeter shell casings found in the defendant's yard, proof that the defendant discharged the weapon is weakened substantially.[11] "It appears doubtful that the Commonwealth has enough evidence to reprosecute the defendant[], but we will leave the final decision on that matter to the district attorney and the trial court." *Commonwealth* v. *Torres*, 424 Mass. 153, 164 (1997). See *Lockhart* v. *Nelson*, 488 U.S. 33, 40-41 (1988); *Commonwealth* v. *DiBenedetto*, 414 Mass. 37, 45-46 (1992), *S.C.*, 427 Mass. 414 (1998); *Kater* v. *Commonwealth*, 421 Mass. 17, 18 (1995) (if evidence admitted at trial is sufficient to send case to jury, but insufficient when all improperly admitted evidence is disregarded, double jeopardy principles do not bar retrial).

4. *Conclusion.* The order denying the defendant's motion to suppress evidence seized pursuant to the search warrant is reversed. On the counts charging possession of a machine gun (G. L. c. 269, § 10[c]), the judgments of conviction are reversed, the findings of guilt are set aside, and judgments shall enter for the defendant. On the defendant's conviction of discharging a firearm within 500 feet of a dwelling, the judgment is reversed and the finding of guilt is set aside.

*So ordered.*

---

[11]In the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), the evidence was ample that a firearm had been fired from inside the defendant's yard, in a thickly settled area, and that the shots were fired within 500 feet of a neighboring dwelling.