Hinkle, J.
Defendant Leslie Gomes has been indicted for possession of cocaine with intent to distribute and possession of marijuana with intent to distribute. The defendant moves to suppress all items police seized from the defendant’s apartment pursuant to a search warrant issued by the Lowell District Court. The defendant contends that the affidavit of Lowell Police Inspector Arthur A. Boyle supporting the application for the warrant failed to establish probable cause to issue the warrant. After a hearing and review of the warrant and its supporting affidavit, I allow the motion to suppress.
Inspector Boyle’s affidavit sets forth the following. Several weeks before April 10, 1996, the Special Investigations Unit of the Lowell Police Department received numerous complaints about the first floor, front, left side apartment at 403 Pawtucket Street, Lowell (“the subject premises”). The apartment building at this address has twelve units on three floors and is located in a high drug distribution area. Unidentified callers said that people entered and left the building at all hours, that they arrived on foot and by car, and that when they left the building, they left in a hurry. In addition, an unidentified prostitute drug abuser who lived in the building was known to be directing people looking for drugs to the first floor, front, left apartment.
As a result of this information, Inspector Boyle undertook surveillance of the subject premises, which is the defendant’s apartment. Inspector Boyle observed persons in the window of the defendant’s apartment who monitored foot traffic outside. When individuals approached the front door at 403 Pawtucket Street, often the door was opened before the person knocked or rang the bell. Inspector Boyle observed persons leaving the building who looked in all directions and acted nervously. He also saw individuals leave the building and walk down the street to a parking lot where a car waited. The persons then got into the car, and left the area quickly.
On an unidentified date before April 10, 1995, Inspector Boyle and Inspector Santos, both of the Lowell Police Special Investigations unit, met with a confidential informant. Inspector Boyle knew the confidential informant’s true identity and address, and Inspector Boyle’s supervisors had met the confidential informant. The confidential informant agreed to participate in a controlled purchase of heroin from the subject premises.
Before the confidential informant made the controlled buy, he was searched by police officers who did not find any money or controlled substances on him. After that search, police officers gave the confidential informant money supplied by the Lowell Police Department and instructed him to purchase heroin from the subject premises.
The police officers observed the confidential informant go to the front door of 403 Pawtucket Street, where a female opened the door and let him into the building. After entering the building, the confidential informant went to the first door on the left. A short time later, the confidential informant left the building. He was met by the police at a prearranged location, where he turned over a quantity of packets with a red stamp. Inspector Boyle recognized these packets to be heroin.
The confidential informant told Inspector Boyle that after entering the building he was directed to the first door on the first floor, left front of the building. The confidential informant said that he knocked on the door and told the person who opened the door that he wanted to buy some heroin. The person who opened the door went inside the apartment and returned a short time later with a quantity of packets believed to be heroin. The confidential informant told Inspector Boyle that he exchanged the cash for the packets and then left the building.
Within the next 72 hours, Inspector Boyle sought a search warrant. On April 10, 1996, Inspector Boyle received a warrant to search the subject premises for, “Heroin, a controlled substance as defined in M.G.L 94C. All books, records, papers, documents, monies, software, and paraphrenalia [sic] related to the possession and/or distribution of heroin.” Upon execution of the search warrant, the police seized cocaine and marijuana. No heroin was seized.
When challenging a search conducted pursuant to a warrant, the defendant has the burden of showing that the evidence was illegally obtained. Commonwealth v. Taylor, 383 Mass. 272, 280 (1981). In this case, the defendant alleges that the magistrate lacked *334 probable cause to issue the search warrant. To establish probable cause, the affidavit supporting the warrant must “contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched.” Commonwealth v. Cefalo, 381 Mass. 319, 328 (1980). In reviewing a finding of probable cause, only facts revealed on the face of the affidavit and any reasonable inferences to be drawn from those facts may be considered. Commonwealth v. Fenderson, 410 Mass. 82, 88 (1991); Commonwealth v. Allen, 406 Mass. 575, 578 (1990).
Where, as here, an affidavit relies on information from a confidential informant, the affidavit must satisfy the two-pronged test set forth in Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), before a finding of probable cause can be made. Commonwealth v. Upton, 394 Mass. 363, 374 (1985). Under the Aguilar-Spinelli standard, the affidavit must set forth (1) some of the underlying circumstances from which the informant concluded that the items were where he claimed they were (the basis of the knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the information was credible or reliable (the veracity test). Upton, 394 Mass. at 375.
Here, the defendant challenges the second prong of the Aguilar-Spinelli standard, the veracity test. To satisfy this prong, the affidavit must contain facts establishing “either the general veracity of the informant or the specific reliability of his statement” in the particular case. Commonwealth v. Parapar, 404 Mass. 319, 322 (1989). However, “police corroboration of an informant’s detailed tip can compensate for deficiencies in either or both prongs of the standard and thus satisfy the [Massachusetts Declaration of Rights] art. 14 probable cause requirement.” Commonwealth v. Desper, 419 Mass. 163, 167 (1994) (quoting Commonwealth v. Warren, 418 Mass. 86, 89 (1994)).
Inspector Boyle’s affidavit does not contain “track record” information from which the magistrate could conclude that the confidential informant was a reliable source. Most importantly, the affidavit does not state that the confidential informant had provided accurate information in the past to the police. See Desper, 419 Mass. at 166; Warren, 418 Mass. at 89. This deficiency is not offset by other information in the affidavit. The callers reporting the activities at 403 Pawtucket Street do not corroborate the informant’s veracity because the affidavit does not state whether the callers were anonymous or known. The callers also “failed to provide the sort of idiosyncratic detail that would effectively corroborate and lend credibility to the informant’s assertions.” Desper, 419 Mass. at 164. I also rule that Inspector Boyle’s surveillance, as outlined in the affidavit, is not sufficiently detailed to bolster the informant’s reliability. Finally, the assertion that a prostitute who is a drug abuser living in the building “is known” to be directing persons looking for drugs fails to establish how this information is known.
“A controlled purchase of narcotics, supervised by the police, provides probable cause to issue a search warrant.” Warren, 418 Mass. at 89 (citing Commonwealth v. Luna, 410 Mass. 131, 134 (1991)). “Generally a ‘controlled buy’ has at minimum these components; (1) a police officer meets the informant at a location other than the location where it is suspected that criminal activity is occurring; (2) the officer searches the informant to ensure the informant has no drugs on his person and (usually) furnishes the informant with money to purchase drugs; (3) the officer escorts or follows the informant to the premises where it is alleged illegal activity is occurring and watches the informant enter and leave those premises; and (4) the informant turns over to the officer the substance the informant has purchased from the residents of the premises under surveillance.” Desper, 419 Mass. at 168.
In this case, the confidential informant performed a controlled buy which does not satisfy those components. The confidential informant was searched, given money to buy heroin, and observed until he entered the apartment building. However, the confidential informant was not monitored during the time between, his departure from 403 Pawtucket Street and his arrival at a prearranged location. In my view this is a critical deficiency in the controlled buy.
From the information set forth in the affidavit, it cannot be ruled out that the confidential informant did not purchase the heroin from another apartment at the subject premises, or from some other location before his meeting with the police officers at the prearranged location. “In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men . . . act.” Commonwealth v. Hason, 387 Mass. 169, 174 (1982).
This confidential informant’s controlled buy does not compensate for the deficiencies in the affidavit account of the informant’s reliability. Therefore, I find and rule that the defendant has carried his burden of showing that there was no probable cause to issue the search warrant.

ORDER

For the foregoing reasons, it is hereby ORDERED that the motion to suppress of the defendant, Leslie Gomes, is ALLOWED.