# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1941

_____

United States of America,                    *
                                             *
            Appellee,                        *
                                             *   Appeal from the United States
      v.                                     *   District Court for the
                                             *   Western District of Arkansas.
Johnny William Neal,                         *
                                             *
            Appellant.                       *

_____

Submitted: January 15, 2008
Filed: June 16, 2008

_____

Before WOLLMAN and SMITH, Circuit Judges, and GRITZNER,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Johnny William Neal entered a conditional guilty plea to one count of possession with intent to distribute more than five grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii).  In his plea, Neal reserved the right to appeal the district court's[2] denial of his motion to suppress.  Because Neal has

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

[2]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

not made a sufficient showing under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), we affirm.

I. Background

On May 2, 2005, two confidential informants went to Neal's residence for the purpose of conducting a controlled buy of marijuana from Neal. One of the informants followed Neal into his bedroom and purchased marijuana. The informant later testified that while in Neal's bedroom she observed stacks of firearms and a gun safe. A second controlled buy was arranged on May 25, 2005, in an attempt to purchase methamphetamine from Neal. This time, the other confidential informant went into Neal's bedroom to make the purchase. No purchase was made, however, because law enforcement officers listening to the informant's body wire believed that she was in distress and proceeded to Neal's residence, where they waited outside while both informants left the residence. Later that evening, law enforcement officers faxed to a state judge an affidavit in support of a warrant to arrest Neal for distribution of marijuana. The judge signed the affidavit and faxed it back, but did not issue an arrest warrant. Sometime after 10:00 p.m., the officers arrived at Neal's residence, made a forced entry, and arrested Neal in the living room. One of the arresting officers testified that after Neal was arrested, the officer looked into the adjacent bedroom and believed that he observed a rifle therein.

Thereafter, local law enforcement contacted Wade Vittitow, a Special Agent with the United States Department of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives, to initiate an investigation of Neal's possible possession of firearms in violation of 18 U.S.C. § 922(g)(9). On June 28, 2005, Vittitow submitted to a magistrate judge[3] an affidavit in support of a search warrant for firearms, ammunition,

[3]The Honorable Beverly Stites Jones, United States Magistrate Judge for the Western District of Arkansas.

and related items in Neal's residence.  The information in the affidavit that related to firearms was the observation by two officers of "numerous rifles" in the master bedroom when Neal was arrested on May 25, 2005, and the confidential informant's observation of firearms in Neal's residence.

The search warrant was issued on June 28, 2005, and was executed the following day.  The search uncovered numerous firearms, cans of ammunition, and money located in Neal's bedroom and gun safe.  Law enforcement also discovered within the gun safe film canisters that contained a substance suspected to be methamphetamine.  The search was put on hold until local law enforcement officers were able to obtain a search warrant for narcotics.

A federal grand jury indicted Neal on charges of possession with intent to distribute more than five grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii), and possession of a firearm that was transported in interstate commerce and from which the serial number had been removed in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B).  Neal filed a motion to suppress all evidence obtained during the June 29, 2005, search, contending that the search was unreasonable under the Fourth Amendment of the United States Constitution and article 2, section 15 of the Arkansas Constitution.  Neal also asserted that the search violated Franks v. Delaware, 438 U.S. 154 (1978), because the officers intentionally, knowingly, or with reckless disregard for the truth, omitted material information and included false statements in the affidavit in support of the search warrant.  Although the district court questioned whether Neal's motion was sufficient to raise Franks issues, it granted a hearing on those issues, following which, the district court denied the motion to suppress.

II. Analysis

"On appeal from a denial of a motion to suppress, we review for clear error the factual findings of the district court and we review *de novo* the legal determination that the Fourth Amendment was not violated." United States v. Robinson, 455 F.3d 832, 834 (8th Cir. 2006). We affirm unless "the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." United States v. Ramos-Caraballo, 375 F.3d 797, 800 (8th Cir. 2004) (internal quotation omitted).

Neal argues that his motion to suppress should have been granted because the affidavit submitted in support of the search warrant contained false information and omitted information pertinent to a probable cause determination. In Franks, the Supreme Court held that a search warrant must be voided and the fruits of the search suppressed if a defendant proves by a preponderance of the evidence that (1) a law enforcement officer knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and (2) without the false statement, the affidavit would not have established probable cause. 438 U.S. at 155-56; United States v. Snyder, 511 F.3d 813, 816 (8th Cir. 2008). This rationale also applies to information that the affiant deliberately or with reckless disregard for the truth omits from the affidavit such that the affidavit is misleading and insufficient to establish probable cause had the omitted information been included. United States v. Jacobs, 986 F.2d 1231, 1234 (8th Cir. 1993) (citing United States v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986)). To show reckless disregard for the truth, we do not look simply at whether a statement included in the affidavit was true; rather, we ask whether, when looking at all the evidence available to the officer, the officer "must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported." United States v. Schmitz, 181 F.3d 981, 986-87 (8th Cir. 1999) (alterations in original)

-4-

(quoting United States v. Clapp, 46 F.3d 795, 801 n.6 (8th Cir. 1995)). An affidavit submitted in support of a warrant carries a presumption of validity. Franks, 438 U.S. at 171. A showing of negligence or innocent mistake is not enough to establish a Franks violation. Id.; Snyder, 511 F.3d at 816. Nevertheless, an officer may not circumvent the Franks doctrine by providing only selective information to another officer who is unaware of the full information and therefore includes false information or omits material information from an affidavit in support of a warrant. See United States v. Davis, 471 F.3d 938, 947 n.6 (8th Cir. 2006) (citing Franks, 438 U.S. at 164 n.6); Jacobs, 986 F.2d at 1235; see also Illinois v. Andreas, 463 U.S. 765, 772 n.5 (1983) ("where law enforcement authorities are cooperating in an investigation, as here, the knowledge of one is presumed shared by all"). Thus, we must look at the actions of Vittitow, as the affiant, as well as the actions of the local law enforcement officers who provided information for Vittitow to include in the affidavit.

Vittitow's affidavit stated that local law enforcement officers had an arrest warrant for Neal when they entered Neal's residence on May 25 and observed firearms in his bedroom. It is now undisputed, however, that no arrest warrant was ever issued, a fact that was not made known to Vittitow until after the federal search warrant was executed. Accordingly, although the affidavit unquestionably included false information, there is no evidence that the officers involved in the investigation acted intentionally, deliberately, or with reckless disregard for the truth when they caused the false statement to be included in the affidavit. It is undisputed that there was probable cause to arrest Neal. Additionally, one of the arresting officers testified that the signed affidavit was in his possession during the May 25 arrest and that he believed a valid arrest warrant existed. Before submitting the affidavit, Vittitow spoke with the two local law enforcement officers who were investigating Neal and was informed that a valid arrest warrant existed for Neal's arrest. See United States v. Jones, 471 F.3d 868, 874 (8th Cir. 2006) (when an affiant receives information from another detective, the other detective is considered a reliable informant). Thus, there

is no evidence that any of the officers were intentionally trying to mislead the magistrate judge or that they were acting with reckless disregard for the truth.

Neal further asserts that the affidavit omitted material information that would have affected the magistrate judge's determination of whether probable cause existed. As indicated above, omitting material information from an affidavit can form the basis of a Franks violation. Snyder, 511 F.3d at 816; Reivich, 793 F.2d at 960. Neal points to the fact that the affidavit did not indicate that Neal's arrest on May 25 took place in his residence, late at night, and after a forced entry. Whatever the circumstances surrounding Neal's arrest, the inclusion of these details in the affidavit would not have eliminated the existence of probable cause. So also with respect to Neal's argument that the affidavit was misleading because it discussed only one confidential informant who allegedly made all the observations of firearms in Neal's bedroom, when in actuality there were two informants who were in Neal's bedroom at different times, for we consider this to be at most an immaterial discrepancy. See United States v. Brown, 461 F.3d 1062, 1073 (8th Cir. 2006) (noting a difference between discrepancies in the affidavit and misrepresentations or omissions). Thus, we conclude that any omissions from or minor discrepancies within the affidavit do not amount to a Franks violation.

Neal also argues that the affidavit falsely stated that the confidential informant who claimed to have observed firearms in Neal's residence was a proven, reliable informant. Information from a confidential informant is reliable if the informant has a history of supplying reliable information or if the information provided by the informant is independently corroborated. United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). Certain of the law enforcement officers acknowledged that the confidential informants in question had not assisted the government in any prior cases and therefore did not have a track record of supplying reliable information. Nevertheless, the confidential informant mentioned in the affidavit had successfully completed one controlled buy from Neal and she reported her first-hand observation

of firearms in Neal's residence. See United States v. Warford, 439 F.3d 836, 842 (8th Cir. 2006) ("[T]here is an inherent indicia of reliability in the richness and detail of a first hand observation." (alteration in original) (internal quotation omitted)). Additionally, Vittitow was able to assess the credibility of both confidential informants when he interviewed them in person. See United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007) (informant's reliability and credibility is strengthened if the informant meets with the officer in person and is willing to provide his or her own personal information). Thus, we are satisfied that the information provided by the informants was sufficiently reliable to support a finding of probable cause for the search.

Because Neal has failed to prove by a preponderance of the evidence that false information was included in the affidavit intentionally, knowingly, or with reckless disregard for the truth, we need not reach the issue of whether the affidavit established probable cause without the false information.

Neal further asserts that the information contained in the affidavit was stale. Information that someone is suspected of possessing firearms illegally is not stale, even several months later, because individuals who possess firearms tend to keep them for long periods of time. United States v. Kennedy, 427 F.3d 1136, 1142 n.5 (8th Cir. 2005). The affidavit stated that a confidential informant observed firearms in Neal's residence on several occasions and that officers observed firearms in Neal's residence on May 25, 2005, only one month prior to the request for a search warrant. This information created a reasonable probability that there were firearms in Neal's residence when the warrant was issued. Thus, the information was not stale.

Neal's final argument is that the officers who conducted the search on June 29, 2005, exceeded the scope of the search warrant because they looked inside film canisters that contained methamphetamine. "A lawful search extends to all areas and containers in which the object of the search may be found." Schmitz, 181 F.3d at 988

(internal quotation omitted). The search warrant for Neal's residence authorized officers to search for firearms, ammunition, items pertaining to firearms or ammunition, receipts reflecting the sale or purchase of firearms or ammunition, and related items. Because the film canisters were located in the gun safe along with firearms, ammunition, and money, and because the canisters may have contained ammunition, money, receipts, or related items, it was not unreasonable for the officers to open them. Upon opening the canisters and inadvertently discovering what immediately appeared to be methamphetamine, the officers halted the search and waited for state law enforcement officers to obtain a search warrant for narcotics. Thus, the officers did not exceed the scope of the search warrant.

The judgment is affirmed.

_____