NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-409                                          Appeals Court

COMMONWEALTH  vs.  DEREK HART.

No. 18-P-409.

Suffolk.     December 4, 2018. - April 11, 2019.

Present:  Kinder, Neyman, & Desmond, JJ.


Probable Cause.  Search and Seizure, Affidavit, Probable cause,
     Warrant.  Constitutional Law, Search and seizure, Probable
     cause.  Practice, Criminal, Motion to Supress.  Firearms.


     Indictments found and returned in the Superior Court
Department on April 26, 2017.

     A motion to suppress was heard by Mary K. Ames, J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Budd, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by her to
the Appeals Court.


     Paul B. Linn, Assistant District Attorney, for the
Commonwealth.
     Barry A. Bachrach (Rhonda L. Bachrach also present) for the
defendant.


     DESMOND, J.  The Commonwealth appeals from a Superior Court

order allowing a motion to suppress evidence discovered during

the execution of a search warrant.[1]  The sole issue presented is whether the observation of a firearm stored in the defendant's home sixty days before the application for a search warrant suffices to establish probable cause to believe that firearms, ammunition, and related materials would be found at that location.  A Superior Court judge determined that it was not sufficient; we affirm.

Background.  An officer from the Boston Police Department's city-wide drug control unit submitted a warrant application to search the residence and person of the defendant, Derek Hart.  Because the officer suspected that the defendant possessed a firearm in violation of G. L. c. 269, § 10 (h), the warrant application requested permission to search for firearms, ammunition, and other gun-related materials.

The central evidence in the affidavit came from a reliable confidential informant (informant), who had spoken with the officer within twenty-four hours of the submission of the application.  The informant told the officer that the defendant "was in possession of a black semi-automatic firearm which [the defendant] kept in his hand and stored on the floor in a bedroom area within the last 60 days while inside the [defendant's

_____

[1] A single justice of the Supreme Judicial Court allowed the Commonwealth's application for leave to pursue an interlocutory appeal and reported the case to this court.  See G. L. c. 278, § 28E.

residence]." The affiant stated that he had personal knowledge that firearms and ammunition are "not easily or quickly discarded," and "are often retained for long periods of time and kept in close proximity to the owners of said firearms."

The affidavit then recited the extensive criminal background of the defendant and the defendant's brother, who was also reported to be living at the residence to be searched. Though the defendant's record was lengthy, his most recent arrest involving a firearm occurred in 2009, when he was arrested for unlawful possession of a firearm and ammunition, discharging a firearm, possession of a high-capacity magazine, and assault with intent to murder. His brother's most recent armed offense took place in 2015, when he was arrested and charged with possession of a firearm and possession of ammunition, amongst other charges. The brother was also subject to an active warrant related to a shooting on January 28, 2017.[2]

The search warrant issued. Upon its execution at the defendant's residence four days later, the police discovered, amongst other items, forty-four live rounds of .45 caliber ammunition, one round of nine millimeter ammunition, $52,540 in cash, and a diamond ring. No firearm was found. The defendant

---

[2] The defendant's brother was not a target of the search warrant, and the affidavit does not allege any connection between the black semiautomatic gun seen in the defendant's home and the January 28, 2017, shooting.

was charged pursuant to G. L. c. 269, § 10 (h) (1) with unlawful possession of ammunition, and being an armed career criminal under G. L. c. 269, § 10G.

A nonevidentiary hearing on the defendant's motion to suppress the evidence was held, and the motion was allowed. The judge concluded that the information regarding the observation of the gun at the defendant's residence was stale because there was "insufficient timely evidence of a continuous illegal presence of weapons in the defendant's residence." This appeal followed.

Discussion. The Commonwealth argues on appeal that the judge erred in concluding that the gun information was stale. The Commonwealth asserts that because a firearm is a valuable, durable item, it is likely to be retained in the same place for more than sixty days, and the information supporting the search warrant application was consequently not stale.

We review the question of whether there was probable cause to issue a search warrant de novo. Commonwealth v. Perkins, 478 Mass. 97, 102 (2017). Our inquiry is limited to the "four corners of the affidavit" (citation omitted), Commonwealth v. Keown, 478 Mass. 232, 238 (2017), cert. denied, 138 S. Ct. 1038 (2018), and allegations in the affidavit are viewed in "a commonsense and realistic fashion" (citation omitted). Commonwealth v. Cinelli, 389 Mass. 197, 213, cert. denied, 464

U.S. 860 (1983). "[P]robable cause to believe [that] evidence of criminal activity will be found in a particular place must be demonstrated by a 'nexus' between the crime alleged and the place to be searched" (citation omitted). Commonwealth v. Matias, 440 Mass. 787, 794 (2004). "Facts asserted in the affidavit must be closely related in time to the issuance of the warrant in order to justify a finding of probable cause; whether facts are stale or timely is determined by the circumstances of each case." Commonwealth v. Connolly, 454 Mass. 808, 814 (2009). When an informant describes his or her observation as bounded by a range of time, "we assume that the observation occurred at the most remote date within that time span." United States v. Dauphinee, 538 F.2d 1, 5 n.7 (1st Cir. 1976). Therefore, the question before us is whether a single, isolated observation of a firearem sixty days before the application for a search warrant is sufficient to establish probable cause that a firearm remains at the location to be searched.

We conclude that the affidavit submitted with the warrant application failed to provide a timely nexus between the informant's observation of the firearm and the location to be searched. First, we are unpersuaded by the State and Federal cases cited by the Commonwealth where dated observations of a firearm were found to be timely. In each of the cases cited by the Commonwealth, there was other evidence suggesting that

possession of the gun was continuous.  For example, in United States v. Neal, 528 F.3d 1069 (8th Cir. 2008), an informant had observed "stacks of firearms and a gun safe" in the defendant's home on several occasions, and two police officers saw "numerous rifles" in the bedroom in the course of making an arrest.  Id. at 1071, 1074.  In Commonwealth v. Beliard, 443 Mass. 79 (2004), there was sufficient evidence to show a "continuous illegal presence of a number of weapons in the defendant's residence over extended periods of time" to the point where the timing of the executing of the warrant became "of less significance."  Id. at 85-86.  Likewise, in Commonwealth v. Fleurant, 2 Mass. App. Ct. 250 (1974), the police were searching for a number of guns, including a machine gun, and the informant had provided "considerable additional information" that indicated that the firearms remained in the home.[3]  Id. at 254.  A staleness inquiry is necessarily fact-driven, and all of the cases cited by the Commonwealth had substantial facts beyond the timing of the most recent observation from which it could be reasonably inferred that possession of the firearms was continuous.  None of those

---

[3] In Fleurant, although the most recent observation of the firearms occurred a full thirteen months prior to the warrant application, that fact was not before the magistrate and was only revealed at trial. In fact, "[t]he language of the affidavit indicated that at least some of the events contained therein had taken place recently."  Id. at 254-255.

cases, unlike our own, featured an isolated observation of one weapon by a single individual.

Indeed, the affidavit submitted with the warrant application included little information about the gun beyond its description as a semiautomatic weapon, kept "in [the defendant's] hand," and stored on the floor in a bedroom area of the home. There was no mention as to why the defendant possessed the gun or how he had acquired it. There was no assertion that the gun was used to commit a recent armed offense or was linked to any ongoing course of conduct. Compare Commonwealth v. James, 424 Mass. 770, 778 (1997). Firearms are said to be more durable than drugs because they are "not likely to be consumed or destroyed." Fleurant, 2 Mass. App. at 255. However, standing alone, a gun's durability does not adequately support a belief that the firearm will still be in the home two months later. Compare id. ("We think the affidavit recited 'facts indicating activity of a protracted and continuous nature [and therefore] . . . the passage of time [became] less significant'" [citation omitted]).

"A defendant's criminal history may be factored into a probable cause determination as corroboration of an informant's tip, but only if the history is sufficiently recent and similar to the crime charged to demonstrate that 'the defendant was not averse' to committing such a crime." Commonwealth v. Allen, 406

Mass. 575, 579 (1990), quoting Commonwealth v. Germain, 396

Mass. 413, 418 n.7 (1985). Here, while the defendant's criminal

history is extensive, his most recent arrest for a firearm-

related offense was eight years prior to the search in question.

Such a conviction is too remote in time to support probable

cause that a firearm would be in his residence or on his person.

See Allen, 406 Mass. at 579 (defendant's four year old

conviction found to be too remote). Likewise, the brother's

criminal history adds little to the probable cause analysis.[4] In

short, a single observation of a firearm in a residence sixty

days prior to the application for a search warrant does not

establish probable cause that firearms, ammunition, and related

materials would be found at that residence.

> Order allowing motion to
> suppress affirmed.

---

[4] When looking for a "nexus between the items to be seized and the place to be searched," we consider "the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide" the items. Cinelli, 389 Mass. at 213, quoting United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir. 1970). The brother's criminal record goes to none of these factors.